# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 6, 2015

## STATE OF TENNESSEE v. TYLER YOUNG

**Appeal from the Criminal Court for Shelby County**
**No. 11-04219     Chris Craft, Judge**

_____

**No. W2013-01591-CCA-R3-CD  - Filed February 6, 2015**

_____

Appellant, Tyler Young, was convicted by a Shelby County jury of aggravated burglary, employing a firearm during the commission of a dangerous felony, and two counts of attempted aggravated robbery. The trial court ordered him to serve an effective sentence of fourteen years in the Tennessee Department of Correction. On appeal, he challenges the sufficiency of the evidence supporting his convictions for employing a firearm during the commission of a dangerous felony and attempted aggravated robbery and argues that the trial court erred in its sentencing. Following our review, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Paul J. Springer, Memphis, Tennessee, for the appellant, Tyler Young.

Herbert H. Slatery III, Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; and Jose Francisco Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

This case stems from the home invasion burglary and attempted robbery of the residence of Valarita Watt and Elijah Robinson on April 4, 2011, in Memphis, Tennessee. During the course of the burglary, appellant was shot and his accomplice was killed. We

note that one of the victims, Elijah Robinson, passed away prior to the trial, which began on February 5, 2013.

Valarita Watt testified that on April 4, 2011, she and Elijah Robinson lived in a house on Glenbrook Street in Memphis. That day, she and her stepdaughter were lying in bed watching television while Mr. Robinson was lying down in a room across the hall. She recalled that Mr. Robinson asked her whether she heard noises. She said that at first, she did not hear anything but that later she heard the same noises. Mr. Robinson checked the house to see if anyone had entered. She said that he did not find anyone and that as he returned to his room, he said, "'I hope ain't nobody in here, and if they is, I'm . . . back here.'" Ms. Watt testified that eight to fifteen seconds later, a gunman stepped into her room and said, "'Shut up, [expletive].'" She said the gun was black. She threw the bed covers over her head, pushed the child to the back of the bed, and yelled to Mr. Robinson that the man had a gun. Ms. Watt said that after this statement, she heard "total shooting." She then heard someone screaming, "'Don't kill me, 'E.' 'E,' please don't kill me.'" Ms. Watt explained that Mr. Robinson was known as "E." She said that she turned on the lights and saw Mr. Robinson standing in the middle of the room, saw one man "in [her] floor jumping, deceasing, and one guy in the corner, shot in the arm, screaming, 'Don't kill me.'" Ms. Watt identified appellant in the courtroom as the injured man. She said that when Mr. Robinson saw appellant, he asked, "'Tyler, did you try to rob me and my family?'"

Ms. Watt testified that Mr. Robinson checked the house for more intruders but that the two men in her room were the only "unwanted people" in the house. She said that neither man had permission to be in her house. Ms. Watt testified that Mr. Robinson owned a weapon at the time but that it was not a .45 caliber pistol. She said that she learned that the men entered through a window in what she called their exercise room. The window was broken and raised. Ms. Watt identified Mr. Robinson's gun, and the assistant district attorney general showed her a second gun that she had never seen before trial. Ms. Watt testified that the incident was terrifying and that after the incident she was unable to sleep, even after she moved out of the house where the incident occurred.

On cross-examination, Ms. Watt testified that appellant was not the man who entered her room with the gun. Ms. Watt identified pictures of Mr. Robinson's gun in a drawer and a gun under her television cabinet. She testified that the gun under the cabinet was not Mr. Robinson's. Ms. Watt agreed that they had marijuana in the house for personal consumption, but she testified that Mr. Robinson did not sell marijuana.[1]

---

[1] After Ms. Watt's testimony, the State played a video recording of Mr. Robinson's preliminary hearing testimony. However, the recording was not included in the appellate record.

Memphis Police Officer David Tisdell testified that he was the first police officer to respond to Glenbrook Street. He said that Mr. Robinson met him at the door and explained that two men had broken into his house. Mr. Robinson told him that he had shot both men and gave him the location of the men within the house. Ms. Watt and the child were already outside. Officer Tisdell said that he located the two men, one of whom was unresponsive. He testified that appellant was the second injured man and that appellant advised him that he had been shot in the shoulder. Officer Tisdell assisted appellant in standing and took him outside, where another officer took custody of appellant. Officer Tisdell said that paramedics took appellant to the Regional Medical Center. Officer Tisdell testified that he saw one handgun in the residence — a pistol located in a kitchen drawer to which he was directed by Mr. Robinson.

Paramedic and firefighter Christopher Coleman testified that he responded to the Glenbrook Street address on April 4, 2011. He determined that one of the suspects was deceased. He treated the other suspect for a single gunshot wound to the right shoulder. He also transported the suspect to the Regional Medical Center.

Memphis Police Sergeant Alvin Moore testified that he met appellant at the Regional Medical Center. He took biographical information from appellant and took pictures of his injury.

Memphis Police Officer Marcus Mosby testified that he collected two firearms from the Glenbrook Street residence, one was a .40 caliber and the other was a .45 caliber Ruger. He said that he located the .45 caliber Ruger under a television cabinet and that he was not able to see the weapon until the medical examiner moved the deceased suspect's body. The other weapon was collected from a kitchen drawer. Officer Mosby testified that he also collected six spent .40 caliber rounds and a magazine containing four live .40 caliber rounds.

On cross-examination, Officer Mosby agreed that the .45 caliber weapon was loaded with a round in the chamber and six rounds in the clip.

Memphis Police Lieutenant Robert Scoggins testified that he interviewed appellant on April 4, 2011, and that appellant signed a statement regarding his participation in the offenses at 3:10 p.m. that day. In the statement, appellant agreed that he participated in the attempted robbery. He said that his brother, Tonio Wilson, was with him but that his brother was shot and killed by Elijah Robinson. Appellant told Lieutenant Scoggins that Tonio Wilson had been armed with a .45 caliber pistol but that he himself did not carry a weapon. Appellant said that he attempted to rob the victims because he believed they had marijuana and money. He explained,

My brother had been living at my mother's house for too long and she was ready for him to get his own by him being that old. That's when I convinced him to go and rob [Elijah Robinson] because my brother is not from down here so he didn't never know [Elijah Robinson]. I gave him a plan and told him it was simple and easy and we could do it.

Appellant told Lieutenant Scoggins that they did not believe that Mr. Robinson was at home but that they knew that someone was inside the home. They entered through a window and went down the hall. When Ms. Watt yelled, Elijah Robinson began shooting at them. Appellant insisted that his brother never pointed his gun.

Following the close of proof and deliberations, the jury convicted appellant as charged. The trial court sentenced him as a Range I, standard offender, to four years for aggravated burglary and four years for each of the two attempted aggravated robbery convictions. The court sentenced him as a violent offender to six years for employing a firearm during the commission of a dangerous felony. The trial court imposed partially consecutive sentence alignment for a total effective sentence of fourteen years. It is from these judgments that appellant now appeals.

## II. Analysis

### A. Sufficiency of the Evidence

Appellant challenges the sufficiency of his convictions for attempted aggravated robbery and employing a firearm during the commission of a dangerous felony. He does not challenge his conviction for aggravated burglary. Regarding his convictions for attempted aggravated robbery, he asserts that he could not have intended to gain control over Elijah Robinson's property because he believed that Mr. Robinson was not home and that no evidence showed that he attempted to gain control over either victim's property. He contests his employing a firearm conviction on the basis that his brother carried a firearm, not him, and that no evidence indicated that his brother employed the firearm. The State maintains that the evidence was sufficient to support all of appellant's convictions. We agree with the State.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant

must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

As charged in this case, a defendant is guilty of criminal attempt to commit a crime when he or she, acting with the kind of culpability otherwise required for the offense, "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3). A person commits the offense of aggravated robbery by the "intentional or knowing theft of property from the person of another by violence or putting the person in fear" and the theft is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. §§ 39-13-401, -402. Tennessee Code Annotated 39-17-1324(b)(1) provides, "It is an offense to employ a firearm during the commission of a dangerous felony," of which aggravated burglary is enumerated as a dangerous felony. *Id.* § 39-17-1324(i)(1)(H). The Tennessee Supreme Court has defined "employ" as "to make use of," which is also the definition included in the jury charge in this case. *See State v. Broderick Devonte Fayne*, ---S.W.3d ---, No. W2012-01488-SC-R11-CD, 2014 WL 5430049, at *6 (Tenn. Oct. 27, 2014).

The State pursued a theory that appellant was criminally responsible for the actions of his accomplice in this case. "A person is criminally responsible as a party to an offense if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. § 39-11-401(a). Further, a person is criminally responsible for an offense committed by the conduct of another, if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" *Id*. § 39-11-402(2). While not a separate crime, criminal responsibility is a theory by which the State may alternatively establish guilt based on the conduct of another. *Dorantes*, 331 S.W.3d at 386 (citing *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999)). No specific act or deed needs to be demonstrated by the State, and furthermore, the presence and companionship of an accused with the offender before and after the offense are circumstances from which participation in the crime may be inferred. *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). However, to be convicted, "the evidence must establish that the defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted its commission." *Dorantes*, 331 S.W.3d at 386 (citing *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994); *State v. Foster*, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988)).

Viewed in the light most favorable to the State, the evidence adduced at trial showed that appellant and his brother, Tonio Wilson, planned to steal drugs and money from Elijah Robinson. In effectuating this plan, appellant and Wilson went to Mr. Robinson's house, forced open a window, and entered the house. They suspected that the house was occupied but did not believe that Mr. Robinson was home at the time. However, Mr. Robinson was home and so were Valaria Watt and Mr. Robinson's young daughter. According to appellant's statement to police, Tonio Wilson was armed with a .45 caliber pistol. The pistol was subsequently recovered near his body. Ms. Watt testified that Wilson pointed the gun at her. Wilson and appellant were unable to complete their plan because Mr. Robinson shot them both, killing Wilson. The only disputed evidence at trial was whether Wilson pointed his gun at Ms. Watt, and the jury by its verdict credited Ms. Watt's testimony over appellant's statement that Wilson did not do so. Appellant's conduct in entering Mr. Robinson and Ms. Watt's house with the confessed intention to steal money and drugs from them is sufficient evidence to support a finding that he took a substantial step toward the completion of aggravated robbery. In addition, the evidence supported the finding that Wilson was armed and that he made use of his weapon in the course of the aggravated burglary. Moreover, there is more than ample evidence to support appellant's criminal responsibility for Wilson's actions considering his presence with Wilson in the house and his confession to police. Therefore, we affirm appellant's convictions for attempted aggravated robbery and employing a firearm during the commission of a dangerous felony.

B. Sentencing

Appellant contends that the trial court erred in its sentencing by incorrectly finding certain enhancement factors, not finding any mitigating factors, and not making the findings required for designating a defendant as a dangerous offender for purposes of consecutive sentencing. The State responds that the trial court did not abuse its discretion in sentencing. We agree with the State.

1. Sentence Length

The trial court sentenced appellant as a Range I, standard offender, and he was therefore subject to a sentencing range of three to six years for his aggravated burglary and attempted aggravated robbery convictions, all Class C felonies. The trial court sentenced him to four years for each of these convictions. His sentence for employing a firearm during the commission of a dangerous felony was six years, which is the mandatory minimum set by Tennessee Code Annotated section 39-17-1324(h)(1).

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. *Id.* §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id.* § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant.

*State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at \*6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at \*48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In this case, the trial court considered five enhancement factors advocated by the State and found that two of the five were applicable to appellant's sentencing — that he was a leader in the commission of the offense and that the actions of appellant resulted in the death of a person other than the intended victim. *See* Tenn. Code. Ann. § 40-35-114(2), (12). The trial court found that enhancement factors three ("The offense involved more than one (1) victim[.]"), nine ("The defendant possessed or employed a firearm . . . during the commission of the offense[.]"), and ten ("The defendant had no hesitation about committing a crime when the risk to human life was high[.]") were not applicable. *See id.* § 40-35-114(3), (9), (10). The trial court stated that it considered mitigating factors but found that none applied to appellant's case. The record supports the trial court's application of enhancement factors. Appellant confessed that he formed the plan to rob Mr. Robinson that he and his brother executed, and appellant's brother died in the course of the aggravated burglary and attempted aggravated robbery. Furthermore, the record otherwise demonstrates that the sentence is within the applicable range and in compliance with the statutory purposes and principles. Therefore, the trial court did not abuse its discretion in setting the length of appellant's sentences.

## 2. Consecutive Sentences

The trial court imposed partially consecutive sentences in this case. Appellant's sentence for employing a firearm during the commission of a dangerous felony was ordered to be served consecutively to his aggravated burglary conviction by operation of law under Tennessee Code Annotated section 39-17-1324(e)(1). The trial court aligned appellant's two four-year sentences for attempted aggravated robbery convictions concurrently. The court then ordered that the concurrent four-year sentences for the attempted aggravated robbery convictions be served consecutively to the four-year sentence for aggravated burglary and the six-year sentence for the firearm conviction, resulting in an aggregate sentence of fourteen years.

Prior to 2013, on appellate review of sentence alignment issues, courts employed the abuse of discretion standard of review. *See State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999). Our supreme court has since extended the standard of review enunciated in *State v. Bise*, abuse of discretion with a presumption of reasonableness, to consecutive sentencing determinations. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013); *Bise*, 380 S.W.3d at 707 (modifying standard of review of within-range sentences to abuse of discretion with a presumption of reasonableness); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying abuse of discretion with a presumption of reasonableness to review of alternative sentencing determinations by the trial court). Thus, the presumption of reasonableness gives "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b) . . . ." *Pollard*, 432 S.W.3d at 861.

The procedure used by the trial courts in deciding sentence alignment is governed by Tennessee Code Annotated section 40-35-115, which lists the factors that are relevant to a trial court's sentencing decision. Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1). The length of the resulting consecutive sentence must be "no greater than that deserved for the offense committed." *Id.* § 40-35-103(2). The court may order consecutive sentences if it finds by a preponderance of the evidence that one or more of the following seven statutory criteria exists:

(1)    The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2)    The defendant is an offender whose record of criminal activity is extensive;

(3)     The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)     The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5)     The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)     The defendant is sentenced for an offense committed while on probation; or

(7)     The defendant is sentenced for criminal contempt.

The *Pollard* court reiterated that "[a]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.*

Of the seven statutory factors, the trial court in this case found that factor (4) — that appellant was a dangerous offender — applied to appellant's sentencing. Appellant argues that the trial court failed to engage in a discussion of the *Wilkerson* factors that must accompany the application of Tennessee Code Annotated section 40-35-115(b)(4). *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995). Pursuant to *Wilkerson*, before imposing consecutive sentences based upon the defendant's status as a dangerous offender, the trial court "must conclude that the evidence has established that the aggregate sentence is 'reasonably related to the severity of the offenses' and 'necessary in order to protect the public from further criminal acts.'" *Pollard*, 432 S.W.3d at 863 (quoting *Wilkerson*, 905 S.W.2d at 938)).

In this case, the trial court made the following statements with regard to its determination that partially consecutive sentencing was appropriate:

> I also make findings as far as consecutive sentencing that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. . . . .
>
> I find that the circumstances surrounding the commission of the offense are aggravated. The masks and the gun and the death of the brother. I find that confinement for an extended period of time is necessary to protect society from the defendant's unwillingness to lead a productive life. He dropped out of school when he was in 10th grade. He resorted to an armed attack on a home.
>
> I find that count one -- that count three and four should be run concurrently -- they happened at the same time -- but consecutively to count one and two. And count two of course is consecutive as well by law, which would be an aggregate sentence of 14 years. The first six years would be at a hundred percent in the Department of Correction. I do find that the aggregate length of that 14-year sentence reasonably relates to the offense that he stands convicted of.

Thus, the trial court appropriately considered the *Wilkerson* factors and did not abuse its discretion in finding that appellant was a dangerous offender. Therefore, we affirm appellant's sentences.

## CONCLUSION

Based on the record, the applicable law, and the briefs of the parties, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE